UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARRIEM SWEET,

                              Plaintiff,

                                                                             DECISION AND ORDER

                                                                             00-CV-6004L

       v.

WENDE CORRECTIONAL FACILITY, et al.,

                              Defendants.
_____

      Plaintiff, Karriem Sweet, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") alleges that defendant Rufus Cooks, a DOCS lieutenant who presided over a disciplinary hearing involving plaintiff in August 1997, violated his constitutional right to procedural due process. Plaintiff has also asserted claims against a number of unidentified "John Doe" defendants.[1] Defendants have moved for summary judgment.

---

[1] Plaintiff's claims against two other individual defendants and against Wende Correctional Facility were dismissed by the Court on March 27, 2003. Dkt. #41.

**DISCUSSION**

**I. Claim Against Cooks**

Plaintiff alleges that Cooks found him guilty at an August 1997 disciplinary hearing, and sentenced him to 180 days in the Special Housing Unit, in violation of plaintiff's due process rights. The primary basis for this claim appears to be plaintiff's allegation that Cooks refused to call certain inmate witnesses requested by plaintiff. *See* Plaintiff's Statement of Material Facts ¶¶ 9, 10. Plaintiff also alleges that there was insufficient evidence presented at the hearing to support Cooks' determination. See Affirmation of Sheldon W. Boyce, Esq. (Dkt. #58) ¶¶ 4, 14.

Defendants contend that plaintiff's claim against Cooks should be dismissed based on plaintiff's failure to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides in part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

Typically, an inmate exhausts his claims by going through a three-step process. First, a grievance is filed with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee. *Brownell v. Krom*, 446 F.3d 305, 309 (2$^d$ Cir. 2006).

As this Court has previously explained, however, "[w]here an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, … (*e.g.*, a claim of denial of procedural due process), 'he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal.'" *Rosales v. Bennett*, 297 F.Supp.2d 637, 639 (W.D.N.Y. 2004) (quoting *Flanagan v. Maly*, 99 Civ. 12336, 2002 WL 122921, at *2 (S.D.N.Y. Jan. 29, 2002)); *see also Rivera v. Goord*, 253 F.Supp.2d 735, 750 (S.D.N.Y. 2003) ("Because Rivera raised, in his administrative appeal, his objections to the alleged conduct, he exhausted his administrative remedies regarding this claim through the appropriate correctional channels").

Based on that rule, I previously denied a pre-discovery motion for summary judgment by Cooks, on the ground that the record at that point did not show whether plaintiff had appealed Cooks' decision in the disciplinary hearing, and if so, whether plaintiff had raised the issues asserted in the case at bar. In that March 27, 2003 Decision and Order, I stated that "[i]f the plaintiff appealed directly from the outcome of the August 10 disciplinary hearing, and raised as an issue on that appeal the insufficiency of the evidence, he may have exhausted his administrative remedies on the third claim." 253 F.Supp.2d 492, 496 (W.D.N.Y. 2003). Observing that "[i]t [wa]s undisputed that the parties ha[d] yet to conduct discovery," I therefore decided to "deny the defendants' motion for summary judgment at th[at] time … ." *Id.*

The parties have now completed discovery, and defendants have renewed their motion as to the claim against Cooks, based on plaintiff's failure to exhaust. In support of their motion,

defendants have submitted a copy of plaintiff's appeal from the August 1997 hearing before Cooks. *See* Declaration of Emil Bove (Dkt. #53) Ex. K.

It is difficult to discern from plaintiff's rambling, densely-worded administrative appeal precisely what the asserted grounds for the appeal were, but it clearly did not raise any claims concerning a failure or refusal to call witnesses. That claim, therefore, has not been exhausted, and must be dismissed.

I do note, however, that this claim also appears to be meritless. The Court has listened to the audio recording of the hearing, which shows that Cooks agreed to call the four inmate witnesses requested by plaintiff.[2] One of those inmates appeared by speakerphone and stated that he did not know plaintiff and that he knew nothing about the incident in question. Cooks stated that the other three were refusing to testify at all, and the record contains refusal-to-testify forms stating that all three had said that they either did not know plaintiff or that they knew nothing about the incident. Dkt. #53 Ex. F.

Nothing in the record suggests that Cooks did or failed to do anything concerning these requested witnesses that might have violated plaintiff's constitutional rights. There is no indication that Cooks refused to call these witnesses, or that there was any reason for him to doubt that they were in fact refusing to testify. *See Hill v. Selsky*, 487 F.Supp.2d 340, 343 (W.D.N.Y. 2007) ("Having been told that the inmates were refusing to testify, [the hearing officer] could reasonably have concluded that it would have been futile to call them, and his failure to do so or to go to their cells and interview them himself did not give rise to a constitutional violation").

---

[2]There is no transcript of the hearing, as explained *infra*.

Concerning exhaustion, there is one sentence in the administrative appeal, that, liberally construed, could be read as asserting that the evidence did not support Cooks' findings, at least as to one particular matter. The misbehavior report charged plaintiff with various infractions, based on an incident that occurred while several guards were attempting to pat-frisk plaintiff, who was suspected of concealing a razor. The officers alleged that during the frisk, a hand-held metal detector being use by one of the guards went off near plaintiff's left foot. When the guard ordered plaintiff to remove his left shoe, plaintiff allegedly reacted violently and attempted to strike the officer. Plaintiff was then subdued by the officers.

In his appeal, plaintiff stated that the "evidence sustained finding that clear proof was sufficient to establish that the metal detector did not go off." Dkt. #53 Ex. K. Although, like the rest of that document, this sentence is difficult to decipher, it seems to allege that the evidence did not support a finding that the metal detector had gone off.

It is certainly doubtful whether that alone could be said to have raised an insufficiency-of-the-evidence claim on plaintiff's administrative appeal. For one thing, plaintiff was apparently not charged with possessing a razor, but with assault on staff, harassment, refusing a direct order, and refusing to allow himself to be frisked. Dkt. #53 Ex. J. Thus, whether the metal detector went off or not was not particularly relevant to the charges against plaintiff. *See Allah v. Poole*, ___ F.Supp.2d ___, 2007 WL 2317566, at *3 (W.D.N.Y. 2007) ("The mere fact that an inmate plaintiff filed *some* grievance prior to filing suit is not enough. The grievance must also have related to the subject matter of the federal lawsuit"); *Donahue v. Bennett*, No. 02-CV-6430, 2004 WL 1875019,

at *7 (W.D.N.Y. Aug. 17, 2004) (where plaintiff's grievance was narrower than the allegations in his complaint, plaintiff's claim would be limited to what was contained in the grievance).

Even if plaintiff could be deemed to have exhausted his remedies as to this claim, however, Cooks would be entitled to summary judgment. In general, "due process requires that a prisoner be given specific factual notice of the charged misbehavior for which he faces discipline, a summary of the substance of any adverse evidence reviewed *ex parte* by the hearing officer, and a statement of reasons for the discipline imposed." *United States v. Abuhamra*, 389 F.3d 309, 326 (2$^d$ Cir. 2004) (citing *Sira v. Morton*, 380 F.3d 57, 70, 74-76 (2$^d$ Cir. 2004)). The Court of Appeals for the Second Circuit has described these requirements as "minimal." *Richardson* v. Selsky, 5 F.3d 616, 621 (2$^d$ Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

With respect to the sufficiency of the evidence, the Second Circuit has stated that "[f]or a prison disciplinary proceeding to provide due process there must be, among other things, 'some evidence' to support the sanction imposed." *Ortiz v. McBride*, 380 F.3d 649, 655 (2$^d$ Cir. 2004) (citing *Gaston v. Coughlin*, 249 F.3d 156, 163 (2$^d$ Cir. 2001)), *cert. denied*, 543 U.S. 1187 (2005). Accordingly, "judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Sira*, 380 F.3d at 69 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2$^d$ Cir. 2000)). *See also Luna v. Pico*, 356 F.3d 481, 488 (2$^d$ Cir. 2004) ("some evidence" standard requires some "reliable evidence").

In the case at bar, plaintiff's disciplinary hearing was audiotaped, but the court reporter who was sent the tapes for transcription returned them, untranscribed, with a letter describing the tapes as "mostly inaudible and indiscernible." Dkt. #53 Ex. H. Plaintiff contends that this renders the record "incomplete" and gives rise to material issues of fact concerning plaintiff's sufficiency-of-the-evidence claims. Dkt. #58 ¶ 13.

I disagree. First, the lack of a transcript itself does not give rise to a constitutional violation. *See Hernandez v. Selsky*, No. 04-CV-0552, 2006 WL 566476, at *3 (N.D.N.Y. Mar. 7, 2006) ("Plaintiff had no right under the 'Constitution and laws' to have a tape recording or transcript of his disciplinary hearing considered during his administrative appeal or his disciplinary conviction"); *Dixon v. Goord*, 224 F.Supp.2d 739, 744 (S.D.N.Y. 2002) ("While New York law requires that an electronic record of a disciplinary hearing be maintained, ... such a record is not constitutionally required. ... It is the due process fairness of the hearing itself that is constitutionally significant").

In addition, the Court has listened to the audiotape recording of the hearing, and while it is evident why the court reporter found it impracticable to transcribe it–plaintiff's testimony in particular is difficult to hear, although Cooks' statements are generally audible–it does reflect that Cooks took the testimony of plaintiff and Officer McEvoy, who conducted the frisk and who was the target of plaintiff's alleged assault. Cooks' written findings state that he relied on McEvoy's testimony in reaching his conclusion that plaintiff was guilty of the charges against him. Dkt. #53 Ex. J. That more than meets the "some evidence" standard, and nothing in the record suggests that anything procedurally improper occurred at the hearing. *See Hill*, 472 U.S. at 455-56 ("Ascertaining

whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [hearing officer]").[3]

**II. Claims Against "John Doe" Defendants**

Defendants contend that plaintiff's claims against the "John Doe" defendants must be dismissed as time-barred. Defendants contend that these excessive-force claims, which arise out of alleged assaults on plaintiff by DOCS personnel in August and November 1997, are barred by the three-year statute of limitations applicable to such claims. *See Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2$^d$ Cir. 2004) (statute of limitations applicable to claims brought under § 1983 in New York is three years); *accord Jewell v. County of Nassau*, 917 F.2d 738, 740 (2$^d$ Cir. 1990); *Griswold v. Morgan*, 317 F.Supp.2d 226, 231 (W.D.N.Y. 2004).

In response, plaintiff states that he has identified the John Does at several points during discovery in this case. First, he notes that he sent to the Clerk's Office a list of fifty-seven names purporting to identify the John Doe defendants on May 15, 2002. *See* Dkt. #58 Ex. A. Second, after the Court appointed counsel to represent plaintiff, counsel forwarded to the Court a list prepared by plaintiff that identified seventeen John Doe defendants in October 2004. Dkt. #58 Ex. B. In

---

[3]Plaintiff also stated at his deposition that Cooks "just sided with the officers and wasn't very partial, very impartial [sic]." Dkt. #58 Ex. C at 68. I see no evidence of unfair bias on the part of Cooks, however.

addition, plaintiff named several individuals during his deposition in January 2006 as among the John Doe defendants. *See* Dkt. #58 Ex. C at 31, 62, 75, 102.

Even if plaintiff had moved for leave to amend the complaint to add these defendants as far back as May 2002, however, these claims would be time-barred. The law in the Second Circuit is clear that

> Rule 15(c) [which deals with the relation back of amended pleadings] does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities. Rule 15(c) explicitly allows the relation back of an amendment due to a "mistake" concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.

*Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2$^d$ Cir. 1995), *as modified*, 74 F.3d 1366 (2$^d$ Cir. 1996). *See also Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2$^d$ Cir. 1999) (rule applies "even when a suit is brought by [a] *pro se* litigant"). All that plaintiff can show here is that he did not know the identities of the John Doe defendants when he filed the complaint in 2000. Thus, the limitations period against these defendants ran out in 2000, and an amended complaint identifying them (which plaintiff has never sought leave to file) would not relate back to the filing of the original complaint in 2000. *See Gilmore v. Goord*, 360 F.Supp.2d 528, 531 (W.D.N.Y. 2005) ("The simple fact is that plaintiff did not know the names of the John Doe defendants when he filed the original complaint, and ... his belated naming of three of those defendants in the amended does not relate back to the filing of the original complaint"); *Cimino v. Glaze*, 228 F.R.D. 169, 173 (W.D.N.Y. 2005) ("Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake"); *Shell*

*v. Brzezniak*, 365 F.Supp.2d 362, 368 (W.D.N.Y. 2005) ("Plaintiff's failure to bring these claims against defendants during the applicable limitations period ... is not based on a 'mistake of identity,' but is based on a lack of knowledge of defendants' identities.  Thus, the claims do not relate back to the original pleading").

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #53) is granted, and the complaint is dismissed.[4]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 13, 2007.

---

[4] Plaintiff's counsel agreed to represent plaintiff on a *pro bono* basis, and he has done so diligently.  Because the complaint is now dismissed, counsel's appointment is hereby terminated and counsel has no further responsibility in the case.